IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Tracey Peterson, | ) | C/A No. 0:11-1112-RBH-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Michael J. Astrue, Commissioner of Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC et seq. The plaintiff, Tracey Peterson ("Peterson"), brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the defendant, Commissioner of Social Security ("Commissioner"), denying her claims for Disability Insurance Benefits ("DIB"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

## ADMINISTRATIVE PROCEEDINGS

In March 2007, Peterson applied for DIB, alleging disability beginning March 1, 2007. (Tr. 119.) Peterson's application was denied initially and upon reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). A hearing was held on October 22, 2009, at which Peterson, who was represented by Jared D. Cook, Esquire, appeared and testified. After hearing testimony from a vocational expert, the ALJ issued a decision on February 19, 2010, finding that Peterson was not disabled. (Tr. 648-57.)

Peterson was thirty-five years old at the time of her alleged disability onset date. (Tr . 38, 162.) She has a high-school education and has past relevant work experience as a cook, nursing assistant, and a marker in the sewing industry. (Tr. 61, 120, 126, 139-46.) In her application, Peterson alleged disability since March 1, 2007 due to neurofibromatosis, pain in her right ankle and right shoulder, depression, and stress. (Tr. 119.)

The ALJ found as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

2. The claimant has not engaged in substantial gainful activity since March 1, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: neurofibromatosis with associated right shoulder and ankle pain; back pain status post a motor vehicle accident, depression, and anxiety (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

\* \* \*

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a limited range [of] light work as defined in 20 CFR 404.1567(b). The claimant is capable of lifting and/or carrying objects weighing up to 10 pounds on a frequent basis and up to 20 pounds on an occasional basis; standing 2 hours in an eight hour workday, walking up to 6 hours in an eight hour workday, and sitting (with normal breaks) for a total of up to six hours per eight-hour work day. (20 CFR 404.1545 and 20 CFR 416.945, and Social Security Ruling (SSR 96-8p). The claimant can frequently climb, kneel, balance, and stoop; can occasionally crouch, crawl, and climb ropes[,] ladders[,] and scaffolds. The claimant can perform simple one to [two] step tasks and should have only occasional contact with the public.

\* \* \*

6. The claimant is capable of performing past relevant work as a marker. This work does not require the performance of work-related activities precluded by the claimant[']s residual functional capacity (20 CFR 404.1565).

\* \* \*

*PJG*

7.     The claimant has not been under a disability, as defined in the Social Security Act, from March 1, 2007 through the date of this decision (20 CFR 404.1520(f)).

(Tr. 650-57.)   Peterson submitted additional evidence to the Appeals Council, which denied Peterson's request for review, making the decision of the ALJ the final action of the Commissioner. (Tr. 635-43.)  This action followed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A) and (d)(5), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 404.1505(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973).  The regulations require the ALJ to consider, in sequence:

(1)     whether the claimant is engaged in substantial gainful activity;

(2)     whether the claimant has a "severe" impairment;

(3)     whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4)     whether the claimant can perform her past relevant work; and

(5)     whether the claimant's impairments prevent her from doing any other kind of work.

20 C.F.R. § 404.1520(a)(4).  If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step.  Id.

PJG

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. § 423(d)(2)(A); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id.

PJG

Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

## ISSUES

Peterson raises the following issues for judicial review:

I.     The ALJ improperly gave little weight to the medical opinion of Dr. Kaemmerlen, whose opinions support a finding of disability. Where the ALJ improperly disregards or ignores the opinions of [a] treating physician, can his decision be supported by substantial evidence?

II.    Improper rejection of Dr. Ruffing's opinion. Where the ALJ rejects the opinion of a consultative examiner for improper and erroneous reasons, can his decision be based on substantial evidence?

(Pl.'s Br., ECF No. 19.)

## DISCUSSION

Peterson argues that the ALJ erred in rejecting portions of the opinions of Dr. Robert Kaemmerlen, who is Peterson's treating physician, and Dr. James Ruffing, a consultative examiner. Regardless of the source, the Commissioner will evaluate every medical opinion received. 20 C.F.R. § 404.1527(c). In evaluating medical opinions, generally more weight is given to the opinions of an examining source than a non-examining one. Id. Additionally, more weight is generally given to opinions of treating sources than non-treating sources, such as consultative examiners. Id.

Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. § 404.1527(c)(2). However, "the rule does not require that the testimony be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*). Rather, a treating physician's opinion is evaluated and weighed "pursuant

PJG

to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist."[1]  Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527).  In the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion.  Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Further, " 'if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.' "  Id. (quoting Craig, 76 F.3d at 590).

## A.    Dr. Kaemmerlen

Dr. Robert Kaemmerlen, a general practitioner and Peterson's long-term treating physician, began treating Peterson in 1995.  The records before the ALJ show that Dr. Kaemmerlen treated Peterson for a variety of issues, including neurofibroma, sleeping difficulties, anxiety, and depression.  During the course of Peterson's treatment, Dr. Kaemmmerlen prescribed medication for Peterson's pain, depression, and sleep, and referred her to a neurologist for surgeries to treat her neurofibroma.  With regard to Dr. Kaemmerlen's treatment notes, the ALJ found as follows:

> Dr. Kaemmerlen[']s own treatment records throughout 2008 and 2009 reflect that, although the claimant has had considerable pain from neurofibromatosis, physical examination has revealed no deformity in the extremities and full range of motion of all joints; no focal deficits neurologically, normal sensation, with coordination strands and tone being normal.  His treatment records also state that the claimant had no musculoskeletal deformity and no deformity related to inflammation or lesions. The records state the claimant was in no acute distress[.]  His records further state

---

[1] The Social Security regulations provide that *all medical opinions*, which include opinions of examining doctors and of non-examining state agency doctors, will be evaluated considering these same factors.  20 C.F.R. § 404.1527(c), (e).



that the claimant's depression was stable as long as she takes her medicine. . . .
Finally, I have also taken into consideration Dr. Kaemmerlen[']s statement that he
could find no cause for the claimant's shoulder pain. I have given these clinical
findings controlling weight.

(Tr. 655-56.)

On September 20, 2007, Dr. Kaemmerlen completed a questionnaire consisting mostly of

yes/no questions in which he found that Peterson had significant limitations in her ability to

manipulate, handle, and work with small objects; that she could not stand and walk for more than

a few minutes during the work day; that she had a substantial lack of ability to understand,

remember, and carry out simple instructions; that she would probably have to rest more than an hour

during an eight-hour work day; that she would probably have to miss more than three days of work

per month; that she would probably have to elevate her right ankle for more than an hour during an

eight-hour workday; and that she would have problems with attention and concentration during an

eight-hour workday. (Tr. 313-14.) The ALJ gave little weight to this opinion, finding that it was

"inconsistent with every physical exam concerning the claimant's extremities, as well as neurological

exams." (Tr. 656.)

The record before the ALJ also contains a letter signed by Dr. Kaemmerlen and dated

September 1, 2009. (Tr. 422-23.) In his letter, Dr. Kaemmerlen stated that Peterson's primary

disabling impairment is neurofibromatosis—a genetic, disfiguring disorder that has worsened over

time. The letter also stated that many of the benign tumors caused by the disorder affect Peterson's

ability to function, and specifically mentions neurofibroma in Peterson's right shoulder that affect

her ability to use her right arm, neurofibroma in her brain that cause Peterson to have coordination

problems and an ataxic gait, and pain in Peterson's ankle that is "probably" related to tumors in that

PJG

area. Dr. Kaemmerlen further stated in his letter that Peterson suffers from significant depression, that she takes Prozac, and that she is no longer having suicidal ideation. Dr. Kaemmerlen opined that Peterson would not be able to walk more than two hours in an eight-hour work day; would not be able to use her right arm more than occasionally during a work day; and that her coordination problems would prevent her from being able to keep up a production pace at any kind of physical labor, including sedentary work. He further opined that Peterson's depression would significantly contribute to her inability to work and that she would experience frequent interruptions to her concentration in an eight-hour work day. The ALJ gave little weight to Dr. Kaemmerlen's September 1, 2009 opinion, finding that, although the record showed that Peterson experienced arthritic pain and neuropathic pain due to neurofibromatosis, the clinical evidence did not support the degree of limitations stated in the opinion. As mentioned above, the ALJ instead gave controlling weight to Dr. Kaemmerlen's treatment records, noting that physical examinations revealed no deformities, full range of motion of all joints, no focal deficits neurologically, and that her depression was stable as long as she took her medication. (Tr. 655-56.) The ALJ observed that Dr. Kaemmerlen's own treatment records indicate that he found no abnormalities in Peterson's shoulder. (Tr. 656, 316.) The ALJ also took into consideration treatment records of Dr. Ernesto Potes, Peterson's neurologist, which stated that he could not find any cause for Peterson's shoulder pain, and gave these findings controlling weight. (Tr. 656, 322.)

Peterson argues that the ALJ erred in rejecting Dr. Kaemmerlen's 2009 opinion in that the ALJ "is not qualified to make determinations about whether disabling neurofibromatosis would have resulted in findings different from those contained in Dr. Kaemmerlen's medical records." (Pl.'s Br., ECF No. 19 at 26.) Additionally, Peterson argues that the it was error to find Dr. Kaemmerlen's

PJG

2009 opinion as to Peterson's depression to be inconsistent with his treatment notes that Peterson was "stable." (Id. at 26.)  In support of her argument, Peterson points to positive clinical findings in the record that demonstrate various effects from neurofibromatosis as well as multiple medical records that reflect a depressed affect and adjustments to both dosage and types of depression medication.

The court observes that the ALJ did not deny that Peterson suffered from neurofibromatosis and experienced neuropathic pain as a result; rather, he found that Dr. Kaemmerlen's own treatment notes did not reflect the degree of limitations that were expressed in Dr. Kaemmerlen's 2009 opinion statement.  The court finds Peterson's argument that the ALJ essentially substituted his opinion for that of Dr. Kaemmerlen's to be unpersuasive.  (Pl.'s Br. at 22-23, ECF No. 19 at 25-26.)  An ALJ may consider whether a treating physician's opinion is supported by his own treatment notes when evaluating medical evidence.  See Craig, 76 F.3d at 590 (holding that an ALJ properly rejected a treating physician's assessment when it was not supported by his own treatment notes).  Moreover, the ALJ gave great weight to the mental findings of the consultative examining and state agency physicians, Dr. James Ruffing, Dr. Craig Horn, and Dr. Deborah Price, who all opined that Peterson was capable of understanding, remembering, and carrying out simple instructions.

Upon review of the parties' arguments, the medical evidence, and the ALJ's decision, Peterson has failed to demonstrate that the ALJ improperly applied 20 C.F.R. § 404.1527(c) in evaluating Dr. Kaemmerlen's 2009 opinion.  Although Peterson may point to selective evidence in the medical record that may arguably support Dr. Kaemmerlen's 2009 opinion, the court may not substitute its judgment for the Commissioner's and finds that the ALJ's conclusions are within the bounds of the substantial evidence standard.  See Craig, 76 F.3d at 589 (stating that the court may

PJG

not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence). Accordingly, the court finds that Peterson has failed to demonstrate that the ALJ's decision with regard to Dr. Kaemmerlen's 2009 opinion is unsupported by substantial evidence or controlled by an error of law. See Craig, 76 F.3d at 590 (holding that an ALJ properly rejected a treating physician's assessment when it was not supported by his own treatment notes); see also Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007) (finding that an ALJ may weigh other factors brought to his or her attention that tend to support or contradict a treating physician's opinion) (quoting Watkins v. Barnhart, 350 F.3d 1297, 1301 (10th Cir. 2003)); Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004) (upholding the ALJ's finding that two treating physicians' opinions were entitled to minimal weight, in part, because the opinions were in the form of a checklist, unsupported by objective evidence, and based on the claimant's subjective complaints).

**B.      Dr. Ruffing**

Dr. James Ruffing, a clinical psychologist, performed a psychological consultative evaluation of Peterson on June 27, 2007. Dr. Ruffing found that Peterson appeared to have "an adjustment disorder with depressed mood[,] quite possibly having progressed to [] dysthymic disorder." (Tr. 230.) Dr. Ruffing also found as follows:

> [Peterson] is able to understand and respond to the spoken word. She demonstrates emotional instability and subsequent impairment to focus, attention, and concentration. She does appear capable of performing simple or repetitive tasks; [and] understanding, remembering and carrying out simple to detailed instructions.



(Tr. 230-31.)  The ALJ gave considerable weight to Dr. Ruffing's 2007 opinion, finding it to be consistent with the record.

The record before the ALJ also contains a letter signed by Dr. Ruffing and dated September 22, 2009.  (Tr. 424.)  In his letter, Dr. Ruffing states that he had been asked to clarify his 2007 findings.  He opines that, while Peterson would be able to focus on simple one- and two-step processes, she would "occasionally become overwhelmed by her emotional problems" and "might occasionally need to take an unscheduled break, or leave work entirely, due to becoming overwhelmed emotionally."  He further opines that there would be some days that Peterson "might not be able to attend work due to her emotional instability."

The ALJ gave no weight to Dr. Ruffing's 2009 opinion, stating that "[Peterson]'s attorney paid Dr. Ruffing to modify his previous opinion."  (Tr. 653.)  The ALJ also found that Dr. Ruffing's 2009 opinion was inconsistent with his original opinion.  (Tr. 652.)  The ALJ found Dr. Ruffing's original opinion to be consistent with the record and cited examples of Peterson's ability to care for her disabled child and activities of daily living as indicative of an ability to do sustained work.

Peterson argues that the ALJ's rejection of Dr. Ruffing's 2009 opinion on the basis that it was obtained by an attorney was improper.  (Pl.'s Br., ECF No. 19 at 31-32.)  The Commissioner fails to address this argument.  The court observes that the record contains absolutely no support for the ALJ's suggestion that Dr. Ruffing was improperly paid to modify his opinion.  However, the court finds this error to be harmless, as it was not the sole basis for the ALJ's decision to reject Dr. Ruffing's 2009 opinion and therefore finds that remand is not warranted on this ground.  See Ngarurih v. Ashcroft, 371 F.3d 182, 190 n.8 (4th Cir. 2004); see also Carmickle v. Comm'r Soc. Sec.

*PJG*

Admin., 533 F.3d 1155, 1162-63 (9th Cir. 2008) (finding it to be harmless error where the ALJ identified some reasons that were incorrect but also relied on other, legally valid reasons).

Peterson further argues that the ALJ erred in rejecting Dr. Ruffing's 2009 opinion as being inconsistent with Dr. Ruffing's 2007 opinion. In support of her argument, Peterson cites to deposition testimony given by Dr. Ruffing on September 24, 2010—subsequent to the issuance of the ALJ's opinion—in which Dr. Ruffing stated that his 2009 opinion was "highly consistent" with his 2007 report and that the later opinion clarified rather than modified his earlier report. (Tr. 596.) Dr. Ruffing further testified that, contrary to the ALJ's interpretation, his 2009 opinion did not state that Peterson would not be able to sustain work because she would not show up for work on a regular basis, but rather that, based upon his observations during Peterson's 2007 office visit, Peterson's periods of emotional instability would be overwhelming to the degree that Peterson may need to take unscheduled breaks during the work day, leave work entirely, or not be able to attend work. (Tr. 424.) For the reasons that follow, the court finds this "clarification" to be immaterial.

Peterson argues that, in finding that Dr, Ruffing's opinions were inconsistent, the ALJ discounted Dr. Ruffing's 2009 opinion for an erroneous reason, therefore warranting remand. However, even considering Dr. Ruffing's deposition testimony, Peterson has failed to show how the ALJ's decision to reject Dr. Ruffing's 2009 restrictions regarding Peterson's purported inability to work without interruption is not supported by substantial evidence given the ALJ's detailed findings with regard to Peterson's activities of daily living. See 20 C.F.R. § 404.1527(c)(2) & (c)(4) (stating that in weighing a physician's opinion the ALJ should consider factors including the length of the treatment relationship and the frequency of the exam as well as the consistency of the opinion with the record); Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1160 (11th Cir. 2004) (indicating that

PJG

an ALJ may consider the fact that a physician has only examined the claimant one time in weighing

his opinion). For example, in rejecting the restrictions proffered by Dr. Ruffing in 2009, the ALJ

noted that Peterson takes care of her disabled son, takes him to and from school, and helps him with

his homework. (Tr. 652.) Additionally, the ALJ observed that Peterson's activities of daily living

also included cooking, doing dishes, laundry, folding clothes, sweeping, mopping, taking out the

trash, dusting, cleaning, driving, going to church, and going out to dinner twice a week. (Tr. 652-

53.) Accordingly, the court finds that Peterson has failed to demonstrate that the ALJ's decision with

regard to Dr. Ruffing's 2009 opinion is unsupported by substantial evidence or controlled by an error

of law. See 20 C.F.R. § 404.1527(c)(2) (permitting an ALJ to consider whether the medical opinion

is "inconsistent with the other substantial evidence in your case record").

## RECOMMENDATION

For the foregoing reasons, the court finds that Peterson has not shown that the

Commissioner's decision was unsupported by substantial evidence or reached through application

of an incorrect legal standard. See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829

F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed.

Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

June 20, 2012
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).nsdal/go;sefhoisrhig